Mr. Chief Justice ShaRkey
delivered the opinion of the court.
This action was brought by Cason, as administrator of Wright, to recover a balance due to Wright as the guardian of the wife of the appellant. The amount appears to have become due on a settlement of the guardian with the orphans’ court, and the account was proved and allowed by that court: the records of that allowance and approval were introduced on the trial and relied on as evidence to support the claim. The several entries made in the orphans’ court are set out in the bill of exceptions, from which, also, it appears that no other evidence was introduced, and that the court decided that they were prima facie evidence in support of the claim. This is the only question presented for the decision of this court.
The first thing that appears in the records of the orphans’ court is the choice and appointment of guardian, the infant being above the age of fourteen; and in the same order, the letters of Wright, the testamentary guardian, are revoked. This order was made on the 37th of March, 1827. The guardians appointed then moved for and obtained an order for a citation to Wright to settle his accounts as guardian.
It does not appear that the citation issued was executed. At the same time an order was made, in favor of the guardians appointed, on the executors of Singleton, the father of the infant, to deliver her property to the guardian. At April term there was -an entry of a continuance of the citation to settle, but it seems to have been in the case of R. Singleton’s Executors v. Mary Singleton. At July term, on the 5th of July, as the entry stands, an allowance of eight per cent, was made in favor of Wright, as guardian, upon the amount of money actually expended on account of the ward; and at the same term he presented his account *59 of guardianship, which is said in the entry to be his “ final settlement;” and it was ordered to be recorded. This part of the record only shows that the account was “ filed in court, and ordered to record.” Attached to the account itself is the certificate of a justice of the peace that it was sworn to; under which certificate, or on it, for the record does not show which, is the following indorsement: “ July 1st, 1827; examined, audited and allowed:” signed, Thomas H. Prosser. Then follows the certificate of the clerk of the orphans’ court, that the account is correctly transcribed from the minutes.
I am thus particular in noticing the several entries made in the orphans’ court, because I conceive them to be important to the investigation. If they are relied on as a decree in favor of Wright, the first point that would naturally occur in the inquiry is, does any decree exist? Because, although it may be improper to inquire incidentally into the grounds or regularity of a decree, it is certainly proper that the abstract matter of fact, that there is a decree, should appear. I think it may be shown in a few words, that in truth there exists no such decree or judgment as is contended for.
The duties of guardians in relation to their accounts will be found in the 128th section of the orphans’ court law. They are required to make an inventory within three months, and to present their accounts once in every year, and oftener, if required; which accounts are to be examined and audited in the same way that the accounts of executors and administrators are. This leads to an inquiry into the mode of examining and allowing the accounts of executors and administrators, which is laid down in the S7th section of the same law: “ The judge of probate, besides the duties enjoined upon him in term time, is required to take, receive and audit all accounts of executors, administrators and guardians,” &c. “And the said judge of probate, after examining and auditing such accounts and causing them to be properly stated, shall report the same for allowance to the next term of the said orphans’ court, the executor, administrator or guardian giving at least forty days’ notice of his intention of having such account presented to the said court for allowance at such term by posting up notices thereof in three of the most public places in the county, or advertising the same for three weeks in some newspaper,” &c. “And *60 the court, on due proof of notice as aforesaid, and no objection being made to the account as stated, may decree an allowance thereof.” This is substantially the provision of the statute; the subsequent part provides for the contesting of the claim.
Now one of the two orders made by the court and above noticed, must be relied on as the decree; either the order entered on the 5th of July, allowing a commission of eight per cent., or the in-dorsement of Thomas H. Prosser on the account dated 1st of July, in which, he says, it is examined and allowed.
I should incline to believe that it was the first named order, if a sufficient, or any amount had been stated; but nothing of the kind appears in the order, and in the bilL of particulars there is an item for Samuel Wright’s account, of $208, which may, perhaps, be the amount of commissions; which sum, however, is greatly less than the judgment, and leads to the conclusion, that it is the indorsement on the account which was considered as the decree by the court below.
Applying, therefore, the provisions of the statute to this account, and the order on it, nothing in the nature of a decree appears. The judge barely says, that it is examined and allowed. He does not, if he had the power, pretend to decree against any person.
As far as the indorsement goes it shows but a compliance on the part of the judge, with the duties he is required to perform in vacation. The statute requires him to take, receive, and audit accounts, and report them to the next orphans’ court. Certainly the judge in vacation is not authorised to make a decree. Nothing can be a decree of the orphans’ court unless it be made in term time, and duly entered as such on the records of the court. A minute examination, in relation to the dates will show conclusively that this order of allowance was made in vacation. On Tuesday, the 5th day of July, which, I suppose must have been the second day of the term, the order for an allowance of eight per cent, is made. The judge’s allowance of the guardian’s accounts, is dated on the first of the same month, more than four days before the second order made in court. Now it will appear by reference to the 5th section of the same law, that the terms of the orphans’ court in each county take place on the fourth *61 Monday in every month, and can only continue four days; and I am not aware that the law has been changed in delation to Wilkinson county. The judge, therefore, must have held an illegal, term, or the allowance was made in'vacation. The order itself shows nothing illegal, if made in vacation, and there is nothing to show that it was made in court. The clerk does not certify it as part of the proceedings of the term, but merely as part of the account as copied. I think, therefore, that the evidence offered and received was not a decree of the court, and consequently inadmissible as evidence.
But even if I am mistaken in regard to the facts in this case, and the view I have taken of them, there are other grounds on Avhich I think it clear that this evidence was improperly admitted. I do not mean to deny the rule contended for, that the judgment or decree of a court of competent, or exclusive jurisdiction, directly upon the point, is conclusive, and cannot be incidently inquired into. This rule, however, should be taken with all the conditions or qualifications incident to it. And first it must appear that the parties are the same; for although such judgment or decree may be admissible between different parties for the purpose of showing that such judgment has been given, and all the legal consequences, it is not proof of the matter on which it is founded, in private litigation, unless it be between the same parties or privies. It becomes important, then, in all cases where a judgment is introduced as evidence, to inquire whether the parties are the same or in privity. Under this rule, was the judgment Or order of the orphans’ court, even if valid, admissible to charge the appellants?
The record does not show that they were parties in the orphans’ court, or that the guardians appointed in lieu of Wright, were. They had a citation issued, but no service of it, or appearance in obedience to it appears in the proceedings, and there is nothing to show that Wright was made a party to it. The statute does not authorise a guardian to make a final settlement, until he has given due notice by advertisement. The advertisement is intended to give those interested an opportunity to contest the account, and although not an actual, is a constructive notice to all persons interested, and could .make them parties, *62 without which they are not so. It would devolve on any one introducing a record for the purpose of showing the truth or justice of the matter on which it was forwarded, to show also that the parties were the same, and when the law does not require an actual service of notice in order to make parties; but has substituted a constructive notice, he must show that he has given that constructive notice, and thus given the parties an opportunity to come into court.
This seems to me to be as necessary as 'the service of a writ, or the appearance of the party in the circuit court; and without it, I think it can be looked upon in no other light, than an ex ■parte proceeding. If the records of the orphans’ court contained a notice or the proper evidence of it, the appellants would be considered as parties on the ground of interest.
The rule of law referred to requires also that the court must have jurisdiction. Now if I can show that the orphans’ court has assumed jurisdiction that it did not possess, it will be additional ground for rejecting the evidence. The mode and extent of a guardian’s expenditure for his ward, is laid down in the 131st section of the act before mentioned. The amount to be expended is to be settled by the court, which may, if it thinks proper, allow the guardian to exceed the income of the ward, and order a sale of property for that purpose, but I do not find any thing that authorises the guardian to create debts or make expenditures at his own discretion. Infants are in a great measure dependent on the laws of the country for the protection of their persons and prosperity, and the ample guards provided for them by law, cannot be too strictly observed or enforced.
In a case very similar to this, reported in 6 Sergeant & Rawle, 463, the court held that the orphans’ court had no power to decree a balance against the ward. In that case the court said that “ the guardian is to account with the ward, not the ward with the guardian. The guardian cannot cite the ward to a settlement; but if he has advanced beyond what he has received, that may, if the expenditure were proper and fitting to the estate and condition of the ward, create a responsibility that would be enforced elsewhere.” It was also held, that if the guardian showed a balance against the ward, it would have no operation, *63 but to show that the guardian had discharged his duties. The judge points out in a forcible manner the evil consequences that might result by allowing guardians to report balances against their wards and making such report conclusive. .The general features of the law in Pennsylvania, in relation to guardian and ward are like our own, and if a balance reported there by a guardian is to have no effect in charging the ward, I do not see how it could be used here as evidence against him. I therefore think the orphans’ court exceeded its jurisdiction in making the allowance to Wright, as nothing appears to show that he made the disbursements under the direction of the court,
The judgment must be reversed, and a venire de novo awarded.
Note. — Justice Smith not having heard the argument gave no opinion in the case.